IN THE UNITED STATES DISTRICT COURT FOR THE **FILED**

WESTERN DISTRICT OF OKLAHOMA          JAN - 8 2004

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

MARSHA P. GRIMES,                    )
                                     )
                    Plaintiff,       )
vs.                                  )        NO.  CIV-03-916-HE
                                     )
INVENTION SUBMISSION CORP., et al., )
                                     )
                    Defendants.      )

## ORDER

Plaintiff Marsha P. Grimes filed this action in state court against defendants Invention Submission Corporation ("ISC"), Western Invention Submission Corporation ("WISC"), Intromark Inc. ("Intromark"), Technosystems Consolidated Corporation ("Techno"), Universal Finance Company ("UFC"), Martin S. Berger, John Morrissey, Kaardal & Associates, P.C., and Ivar M. Kaardal.  Berger, she alleges, is an officer of UFC and the sole stockholder of Techosystems, the parent company of ISC, WISC and Intromark, the marketing agent for ISC and WISC.  Morrissey is alleged to both own and be the CEO of UFC, which finances most of the contracts ISC and WISC enter into with their clients.  The remaining defendants, Ivar Kaardal, an attorney, and his law firm, Kaardal & Associates, P.C., allegedly work with ISC's and WISC's Oklahoma clients.

The plaintiff contends she submitted an idea for an invention – a fever monitor – to the defendants, who then induced her to incur substantial debt to finance various patent and marketing services they offer.  The plaintiff claims the defendants violated the Inventors' Rights Act of 1999, the Federal Trade Commission Act, the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), the Oklahoma Deceptive Trade Practices Act, the Oklahoma Consumer Protection Act, and the Oklahoma Invention Development Services Act. She also asserts fraud[1] and breach of contract claims and alleges that the defendants violated a Consent Decree dated Feb. 8, 1994, that they entered into with the Federal Trade Commission.

The defendants removed the action and then filed a motion seeking the dismissal of the plaintiff's claims, pursuant to Fed.R.Civ.P. 12(b)(2) and (6).[2] Alternatively, they request a more definite statement pursuant to Rule 12(e).

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that might be drawn from them, are construed in the light most favorable to the nonmoving party. However, "'the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.'" Springer v. Balough, 232 F.3d 902, 2000 WL 1616246, at *1 (10th Cir. Oct. 30, 2000) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)). See Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). Dismissal is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" Id. (quoting McDonald v.

---

[1]In her first cause of action, the plaintiff sues for fraud, deceit and misrepresentation, which will be collectively referred to as her fraud claims.

[2]The motion to dismiss was filed by all defendants except for John Morrissey, Kaardal & Associates, P.C. and Ivar M. Kaardal. Reference in this order to "defendants" will be to the defendants who joined in the motion.

Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Reviewing the complaint under

that standard, the court concludes the defendants' motion should be granted in part and

denied in part. The rationale for the court's decisions with respect to the plaintiff's claims

and the issue of in personam jurisdiction follows.

## INVENTORS' RIGHTS ACT OF 1999

The defendants contend that the Inventors' Rights Act of 1999 ("IRA"), 35 U.S.C.

§297, cannot afford the plaintiff relief because the Act did not go into effect until January

28, 2000,[3] while the plaintiff's claims are based on misrepresentations made in 1997 during

oral negotiations that preceded the execution of the plaintiff's contracts with WISC and

Intromark. As the petition,[4] contrary to the plaintiff's assertion, does not allege that the

defendants made fraudulent misrepresentations subsequent to the parties' initial contract

negotiations in 1997, the plaintiff's IRA claims are deficient and will be dismissed.[5]

## FEDERAL TRADE COMMISSION ACT

As the plaintiff concedes that the Federal Trade Commission Act does not create a

---

[3]*The plaintiff does not contest the defendants' assertion that the Act does not apply retroactively, stating that she does not seek its retroactive application. Plaintiff's response, p. 4.*

[4]*Because this removed action was originally filed in state court, the plaintiff's initial pleading is denominated a petition.*

[5]*This decision moots the defendants' contention that the plaintiff cannot state a claim under the IRA against defendants Techno, UFC and Berger because they are not "invention promoters," as that term is defined by the Act. 35 U.S.C. § 297(c)(3). The court is not, however, persuaded by the plaintiff's argument, particularly with respect to UFC, that these entities/individual can be held accountable under the IRA because of their "unity of interest" with the other defendants. See discussion infra p.7 regarding piercing the corporate veil.*

private right of action, her claim under that federal act will be dismissed.

## OKLAHOMA CONSUMER PROTECTION ACT

The defendants correctly assert that the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. § 751-790, provides relief for an "aggrieved consumer," an individual who suffered actual damages resulting from a violation of the Act. 15 Okla. Stat. § 761.1(A). They incorrectly argue, however, that the plaintiff has not alleged a loss because she did not claim that she sustained any damages "over and above her payment of the purchase price for the services for which she bargained." Defendants' brief, p. 9.   The defendants ignore the plaintiff's allegations that she did not receive the services she paid for, which are sufficient to state a claim under the OCPA.

## FRAUD

The defendants challenge the plaintiff's fraud claims on the ground they fail to comply with the particularity requirement of Fed.R.Civ.P. 9(b). The court agrees. The plaintiff fails, among other omissions in her complaint, to identify the parties who allegedly made the false statements.[6] Her fraud claims will be dismissed.

## OKLAHOMA DECEPTIVE TRADE PRACTICES ACT

Citing Conatzer v. American Mercury Ins. Co., Inc., 15 P.3d 1252 (Okla. Ct. App. 2000),[7] the defendants assert that the plaintiff's claim under the Oklahoma Deceptive Trade

---

[6]*As noted by the defendants, statements in a brief cannot correct a complaint's deficiencies.*

[7]*Decisions of Oklahoma's intermediate appellate courts are not accorded precedential value, but they are "considered to have persuasive effect." (Okla. Stat. tit. 12, ch. 15, app. 1, Okla.S.Ct.*

Practices Act ("ODTPA"), 78 Okla. Stat. § 51-55, fails because the Act only provides a remedy for wronged business competitors, not consumers.[8]  While the plaintiff concurs that the ODTPA does not create a right of action for consumers, she asserts that she is entitled to proceed under the statute because she did not merely purchase a product from the defendants, but contracted with them to protect her business and intellectual property interests.  As the court is not persuaded by the plaintiff's attempt to distinguish herself from a mere consumer, her claims under the ODTPA will be dismissed.

### RICO

"To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), 'a civil RICO claim must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  Smith v. Figa, 2003 WL 21465495, at *3 (10th Cir. June 25, 2003)[9] (quoting Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir.

---

Rule 1.200(c)(2)).

[8]In reaching its decision, Conatzer relied on Bell v. Davidson, 597 P.2d 753 (Okla. 1979). While the Oklahoma Supreme Court stated in Bell that the defendants in that case had to be in competition with the plaintiff to succeed on their ODTPA claim, Bell, as subsequently interpreted by the Tenth Circuit, requires a showing that the defendants are competitors of the plaintiff, "as a prerequisite to enjoining the use of a plaintiff's trademark." VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1108 (10th Cir. 1982). It is arguable whether Bell's holding is limited to claims asserted under the ODTPA involving trademark infringement.  However, the overlap between the ODTPA and the OCPA and the specific provision in the OCPA granting an aggrieved consumer a "private right of action for damages," 15 Okla. Stat. § 761.1(A), support the Conatzer decision that the ODTPA "protect[s] competing business interests and do[es] not present a basis for suit by consumers." Conatzer, 15 P.3d at 1254.

[9]Smith and any other unpublished decisions cited in this order are cited for persuasive value only under 10th Cir. R. 36.3(B).

1989). Much more is required to state a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), than is found in the few sentences the plaintiff has devoted in the petition to her RICO claim. Not only has she failed to specify which section of the Act the defendants allegedly violated, the plaintiff has failed to adequately plead the existence of a RICO person and a separate enterprise, *see* Brannon v. Boatmen's First Nat'l Bank of Oklahoma, 153 F.3d 1144 (10th Cir. 1998); Dirt Hogs Inc. v. Natural Gas Piepline Co. of America, 210 F.3d 389, 2000 WL 368411 (10th Cir. April 10, 2000), or state the RICO predicate acts with the particularity required by Fed.R.Civ.P. 9(b) because they are based on fraud. *See* Smith, 2003 WL 21465495, at *3. There is no indication of who allegedly did what; the generic use of the term "defendants" under these circumstances is inadequate. As the plaintiff's conclusory allegations are insufficient, her RICO claims will be dismissed.

## CONSENT DECREE

The plaintiff's ability to enforce the Consent Decree entered by the United States District Court for the Western District of Pennsylvania depends not only on whether she is an intended third party beneficiary, Floyd v. Ortiz, 300 F.3d 1223, 1226 (10th Cir. 2002), *but see* Rafferty v. NYNEX Corp., 60 F.3d 844, 849 (D.C.Cir.1995) (only parties to government consent decree can seek its enforcement, unless it stipulates that it may be enforced by a third party beneficiary), but whether this court has jurisdiction to enforce it. To the extent that defendants' objection is based on plaintiff's status as an intended beneficiary of the consent

decree — essentially, whether she has standing to pursue a claim — the objection fails, as the consent decree appears clearly designed to protect the rights and interests of future clients of the defendants.[10]   The point is an academic one, however, as resolution of the jurisdictional question precludes the plaintiff's effort to enforce the decree in this court.

An action to enforce a consent decree must ordinarily be brought in the district court which entered the decree.  American Petroleum Inst. v. United States Envtl. Prot. Agency, 216 F.3d 50, 69 (D.C. Cir. 2000); Figures v. Bd. of Pub. Utils., 967 F.2d 357, 361 (10th Cir.1992).  While the decree may provide for enforcement in other district courts, the decree in this case does not do so.  To the contrary, the decree involved here explicitly retains jurisdiction in the issuing court for its enforcement.[11]  While the decree does not state that jurisdiction exists exclusively in the issuing court, it is at least clear there is no explicit authorization for enforcement elsewhere.[12]  Lacking such authorization, this Court lacks

---

[10]*Although consent decrees with the government are ordinarily enforceable only by the parties to the agreement, a different result may obtain where a remedy in favor of intended third party beneficiaries is contemplated.  See Rafferty, 60 F.3d at 849; Floyd, 300 F.3d at 1226 ("intended third-party beneficiaries of consent decrees have standing to enforce those decrees").*

[11] *Paragraph VIII (A) of the Consent Decree provides:*
*The Court shall retain jurisdiction of this matter for the purposes of enabling any of the parties to this Consent Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Consent Decree, for the enforcement of compliance therewith, or for the imposition of punishment or other sanctions for violations thereof.*

[12]*The plaintiff's argument that the decree's reference to retained jurisdiction applies only to claims of the parties to the decree is not persuasive.  For at least some purposes, the decree*

jurisdiction to enforce any rights the plaintiff may otherwise have under the terms of the

decree. The plaintiff's claims against the defendants premised on the consent decree will be

dismissed.[13]

## BREACH OF CONTRACT

The defendants argue that the plaintiff's breach of contract claim against defendants

ISC, Techno and Berger should be dismissed because they do not have a contractual

relationship with the plaintiff. The case cited by the plaintiff in response, Hartsel Springs

Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982 (10th Cir. 2002), is inopposite

and, in the absence of allegations in the complaint, rather than in her response brief, that the

corporate veils should be pierced, the plaintiff's breach of contract claim against defendants

ISC, Techno and Berger will be dismissed.

## OKLAHOMA INVENTION DEVELOPMENT SERVICES ACT

The defendants assert that the plaintiff cannot state a claim under the Oklahoma

Invention Development Services Act (" OIDSA"), 15 Okla. Stat. §§ 680-689, against

defendants Techno, UFC and Berger because they are not "invention developers," as that

term is defined by the Act. 15 Okla. Stat. §681(4). As the plaintiff's response – that these

entities/individual can be held accountable under the OIDSA because of their "unity of

_____

*appears to view prospective clients of defendants as "parties." (See definition of "client", para. II-B of decree).*

[13]*This decisions moots the defendants' proposition that UFC cannot be held accountable for a violation of the Consent Decree, as it was not a party to the litigation.*

interest" with the other defendants -- is neither supported by any authority nor persuasive, particularly with respect to UFC, and the complaint is devoid of any allegations that the corporate veil beween Techno and its subsidiaries should be pierced, the plaintiff's claims against defendants Techno, UFC and Berger under the OIDSA will be dismissed.

## IN PERSONAM JURISDICTION

Claiming ISC, Techno and Berger lack sufficient contacts with the state to subject them to the court's in personam jurisdiction, the defendants seek their dismissal from the litigation. "In a federal question case, the federal court must determine '(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" Springer, 232 F.3d 902, 2000 WL 1616246, at *1(quoting Peay v. Bellsouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir.2000) (internal quotation omitted).   Although RICO authorizes nationwide service of process, the plaintiff's claims under that statute are deficient, so it cannot provide a basis for the court's exercise of jurisdiction. Consequently, pursuant to Fed.R.Civ.P. 4(k)(1)(A),[14] the court looks to Oklahoma's long-arm statute, 12 Okla. Stat. § 2004(F). Id. "The Oklahoma long-arm statute 'permits the exercise of any jurisdiction that is consistent with the United States Constitution,' collapsing the personal jurisdiction analysis into a due process inquiry." Id. (quoting Intercon, Inc. v. Bell Atlantic

---

[14]Fed.R.Civ.P. 4(k)(1)(A) provides that "Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."

Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir.2000)). If minimum contacts exist between a non-resident defendant and the forum state, the defendant can, consistent with the due process clause, be subjected to the court's jurisdiction. *Id.* When personal jurisdiction is challenged under Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of making a prima facie showing that these standards are met. *Id.*

Defendants contend that while WISC contracted with the plaintiff and provides invention submission services in Oklahoma, ISC, Techno and Berger have no contacts with the state. To support their position, the defendants have submitted Berger's affidavit. The plaintiff responds, citing Peay, 205 F.3d at 1206, that the defendants have the burden of showing that showing "that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* at 1212 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (internal quotation marks and citations omitted)). Careful reading of Peay discloses, however, that this burden is imposed on a defendant only after minimal contacts between the defendant and the forum have been shown to exist.

The plaintiff's bald statements that "[e]ach of Defendants who seek dismissal for lack of personal jurisdiction have the same contacts with the State of Oklahoma as do the other Defendants" and that "[e]ach has perpetrated the same fraud and deceit on Oklahoma consumers," plaintiff's response, p. 17, are inadequate to refute the defendants' evidence or satisfy the plaintiff's burden of making her prima facie showing that the defendants can be

10

subjected to the court's in personam jurisdiction. The plaintiff's claims against defendants ISC, Techno and Berger will be dismissed.

Accordingly, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The plaintiff's fraud claims and her claims asserted under the Inventors' Rights Act of 1999, the Federal Trade Commission Act, the Oklahoma Deceptive Trade Practices Act, the Racketeer Influenced and Corrupt Organizations Act, and the 1994 Consent Decree are dismissed. The plaintiff's breach of contract claims asserted against defendants ISC, Techno and Berger and her claims asserted under the Oklahoma Invention Development Services Act against defendants Techno, UFC and Berger are dismissed pursuant to Fed.R.Civ.P. 12(b)(6). All her claims against defendants ISC, Techno and Berger are dismissed for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The defendants' motion is **DENIED** with respect to the plaintiff's Oklahoma Consumer Protection Act claim. The plaintiff is granted leave to amend her complaint within 15 days to correct the pleading deficiencies of her fraud/misrepresentation claims and any other claims, the deficiencies in which can be cured by amendment.

**IT IS SO ORDERED**.

Dated this 8th day of January, 2004.

JOE HEATON
UNITED STATES DISTRICT JUDGE