**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARSHA P. GRIMES, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-03-0916-HE |
| ) | |
| INVENTION SUBMISSION CORP., ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Marsha P. Grimes filed this action against defendants Invention Submission Corporation ("ISC"), Western Invention Submission Corporation ("WISC"), Intromark Inc. ("Intromark"), Technosystems Consolidated Corporation ("Technosystems"), Universal Finance Company ("UFC"), Martin S. Berger, John Morrissey, Kaardal & Associates, P.C. ("law firm"), and Ivar M. Kaardal.[1]  Technosystems is the parent company of ISC, WISC and Intromark, ISC and WISC's marketing agent.  UFC finances most of the contracts ISC and WISC enter into with their clients.  Defendants, Ivar Kaardal, an attorney, and his law firm, Kaardal & Associates, P.C., work with ISC's and WISC's Oklahoma clients.

The plaintiff contends she submitted an idea for an invention – a fever monitor – to the defendants, who induced her to incur substantial debt to finance invention promotion and marketing services they offer.  In addition to asserting fraud and breach of contract/fraud in the inducement claims, the plaintiff alleged in her amended complaint that the defendants

---

[1]*The case was originally filed in state court and then removed to federal court by the defendants.*

violated the Oklahoma Consumer Protection Act ("OCPA"), the Oklahoma Invention Development Services Act ("OIDSA"), the Inventors' Rights Act of 1999 ("IRA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Defendants ISC, WISC, Intromark, Techno, UFC, and Martin S. Berger previously filed motions to dismiss, resulting in the dismissal of the plaintiff's RICO claim against them all and, as to defendant UFC, the dismissal of the plaintiff's fraud claims and her claims asserted under the IRA and the OIDSA. The same defendants subsequently sought summary judgment, which was granted as to the plaintiff's fraud, contract and IRA claims.

Defendants Kaardal & Associates, P.C., and Ivar M. Kaardal have now moved for summary judgment and, based on the court's prior rulings, the plaintiff has consented to the entry of summary judgment in their favor on her IRA, OIDSA, RICO and fraud/breach of contract claims.[2] She also concedes that any claim she had against defendant Ivar Kaardal was discharged because she failed to file a proof of claim in his Chapter 7 bankruptcy proceeding. The court must now determine whether the law firm is entitled to summary judgment on the plaintiff's remaining claim against it asserted under the OCPA.[3]

---

[2]*The plaintiff state in her response brief that she does not intend to waive her right to appeal these rulings, but only recognizes that the reasoning in the court's prior decisions also applies to her claims against Kaardal and his law firm.*

[3]*Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party.* <u>Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.</u>, *165 F.3d 1321, 1326 (10th Cir. 1999).*

Kaardal & Associates asserts that it cannot be held accountable to the plaintiff under the state consumer statute because she testified both that she was satisfied with its work and that Wayne Sadeghy, a representative of defendants WISC and Intromark, was the only person who made misrepresentations to her.  The plaintiff responds that in her deposition she "repeatedly complained about some sort of ill-defined 'neglect' by Defendants" and testified that she thought the ISC defendants and Kaardal and his firm "comprised a single business entity that provided invention and patent services; there was not a distinction in her mind between ISC and Kaardal."  Plaintiff's response, p. 6.  In her affidavit the plaintiff also cites multiple "facts" that she claims the defendants were obliged to disclose but failed to tell her.  The plaintiff attests that if the listed facts had been made known to her, she would not have contracted with the defendants for their services.[4]

The plaintiff has failed to provide evidence demonstrating the law firm violated the OCPA. 15 Okla. Stat. §§ 751-764.1.  To prevail on her claim, she must show that Kaardal & Associates committed an unfair or deceptive trade practice.[5]  See 15 Okla. Stat. §§753(20);

---

[4]*The principal flaw in this argument with respect to the plaintiff's claim against Kaardal & Associates is the law firm provided the plaintiff with patent services; it did not represent her in her contract negotiations with defendants WISC and Intromark.  She had already agreed to purchase the Basic Information Package, the first phase of the defendants' invention promotion services, before she received the "Preliminary Patentability Search Report" from Ivar Kaardal.  Defendants' Exhibit B.*

[5]None of the other practices the OCPA declares to be unlawful are applicable.  See 15 Okla. Stat. § 753.

752(13)-(14);[6] Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000) (to establish claim under OCPA plaintiff must prove: "(1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury."). Most of the proof submitted by the plaintiff is unauthenticated or consists of inadmissible hearsay.[7] The rest – the deposition testimony of Kaardal and the plaintiff and her affidavit – fail to create a material fact question as to the law firm's liability under the statute.

The discussion in the excerpts from Kaardal's deposition pertains only to the amount of time he spent on opinion letters and patent applications and the plaintiff, in the attached pages of her deposition, states that she does not think Kaardal did anything wrong, but "just thought he was a part of the major company," and that, through the company's neglect, her invention was taken by someone else. Plaintiff's Exhibit 6, depo. pp. 218, 240-44, 294.

---

[6]*Neither party discussed the OCPA or the elements of a claim under the statute in their initial briefs.*

[7]*Her evidentiary submissions include: Exhibit 2, a page titled "Patent Services Process," that ISC apparently produced during discovery; Exhibit 3, a letter sent by a patent attorney to ISC regarding another inventor; and Exhibit 4, a "Post Decree Complaint Investigation Form." It does not appear any weight can be given plaintiff's Exhibit 1, a Final Order issued on behalf of the Acting Director of the United States Patent and Trademark Office excluding defendant Kaardal on consent from practicing before that office. The plaintiff relies heavily on factual <u>allegations</u> included in the Final Order. However, the order does not make findings regarding the allegations and charges, but instead specifies that defendant Kaardal executed an affidavit "swearing, among other things, that if he applies for reinstatement, the OED Director will conclusively presume, <u>for the limited purpose of determining the application for reinstatement</u>, that the facts upon which the complaint is based are true and that Respondent could not have successfully defended himself against the charges set out in the complaint." Plaintiff's Exhibit 1, Final Order, ¶ 115, pp. 10-11 (emphasis added).*

It is questionable whether the plaintiff's affidavit contains any facts that would be admissible in evidence. She fails to demonstrate she is competent to testify regarding most of the facts listed in ¶1 that she claims the firm should have disclosed to her, such as her statement that "Kaardal and Associates were paid less than ½ of what they were paid for clients not referred by ISC" and that "[p]rior patent counsel, to whom ISC referred cases, was disbarred after the United States Patent and Trademark Office ('USPTO') found the relationship between that counsel and ISC improper."[8] Plaintiff's Exhibit 7, Affidavit of Marsha Grimes, ¶ 1(A),(E). Assuming these facts can be considered, they, and the deposition testimony the plaintiff relies on, at most only constitute evidence of the firm's negligence.[9] However, as the defendant law firm notes, the plaintiff has not asserted a malpractice claim against it.[10]

---

[8] *Fed.R.Civ.P. 56 requires that an affidavit submitted in connection with a summary judgment motion or response "be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P.56(e).*

[9] *Even if the plaintiff could sue the law firm under the OCPA for negligence or malpractice, the claim would not survive summary judgment due to the absence of proof that the patentability opinion Kaardal rendered or the patent application the firm prepared was erroneous and had caused the plaintiff injury. See Patterson, 19 P.3d at 846-47 (to establish claim under OCPA plaintiff must prove "her damages were caused by the defendant's unlawful practice."). The statement in her brief that "[i]n addition, Plaintiff plans to engage an expert on patent services who will, upon information and belief, opine that the method by which Defendants Kaardal prepared patent applications was inadequate and he devoted inadequate time to same," is insufficient to avoid summary judgment. See Fed.R.Civ.P. 56(f).*

[10] *Because the plaintiff did not allege or submit sufficient evidence to support a negligence claim against Kaardal & Associates, it is unnecessary to address the defendants' argument that a legal malpractice claim falls within the OCPA's exemption for "[a]ctions or transactions regulated under laws administered by ... any other regulatory body or officer acting under statutory authority of this state or the United States ...." 15 Okla. Stat. § 754(2). This issue has not been addressed*

In the absence of some basis for imputing the conduct of the other defendants to Kaardal & Associates, the plaintiff's OCPA claim against the law firm fails.[11] The plaintiff's testimony that she thought Kaardal 'was a part of the major company," is insufficient to hold the law firm accountable for the actions of WISC and Intromark or any of the other defendants.

Accordingly, the court concludes summary judgment in the law firm's favor is warranted on the plaintiff's OCPA claim. Judgment will be entered on all the plaintiff's claims against Ivar M. Kaardal and Kaardal & Associates when the case is concluded with respect to all claims and parties.  See Fed.R.Civ.P. 54(b).

**IT IS SO ORDERED**.

Dated this 22nd of August, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

*by the Oklahoma courts.  See generally* Patterson, *19 P.3d at 847 n.13.*

[11]*The record reflects that the firm's only contact with the plaintiff was in conjunction with the services it provided, which consisted of its preparation of a "Preliminary Patentability Search Report" advising the plaintiff that it was Kaardal's "professional opinion that utility patent protection could potentially be obtainable for [her] invention," defendant's Exhibit B, p.7, and the preparation of a utility patent application for the plaintiff, at her request.  See defendant's Exhibit D.*